John P. Donohoe, J.
This petition under article 78 of the CPLR for a judgment staying all further proceedings now pending undetermined in the City Court of the City of Rye, upon the information of Donald G-raefenecker, and enjoining, restraining and prohibiting the said Donald G-raefenecker from enforcing and prosecuting the Building Zone violations of the City of Rye in Milton Harbor is dismissed.
This proceeding, which is in its essence a prohibition against the maintenance of a criminal prosecution for the violation of a zoning ordinance, brings up the question of the applicability of a city zoning ordinance to lands beneath the navigable waters of the State of New York.
There lies within the municipal boundaries of the City of Rye an arm of Long Island Sound, known as Milton Harbor, a sheltered anchorage which provides a haven for small vessels. *966 The city has classified and prescribed the uses for Milton Harbor in its zoning ordinances and amendments from time to time. The current ordinance establishes a B-7 waterfront Business District for the area lying within 20 feet of the bullcheád of the petitioners’ property and an R-l, one-acre residence district for the remainder of the water area. The uses permitted in R-l districts include private and public recreational uses, not carried on primarily for gain and accessory uses such as wharves, piers, boathouses and similar things, for the recreational use of residents of a single-family houses.
The petitioners maintain a commercial boat facility in this zone. In March, 1967, the Erbsland Boat Yard applied to the Corps of Engineers of the Department of the Army for a permit to install floats for moving boats to a distance of 65 feet offshore of an existing bulkhead. The City of Rye objected upon the ground that such addition would require the approval of the Planning Commission. The petitioners then applied to the Planning Commission in April, 1967, but the application was denied.
In 1968, the petitioners applied to the New York State Commissioner of General Services for an easement upon the lands under water in order to construct their proposed facilities. They have also applied to the Water Resources Commission for approval.
The Department of the Army has granted its approval. The State Office of General Services has not yet done so. The City of Rye asserts the application of its zoning ordinance over the area under water.
In March, 1969, the petitioners went ahead with the construction of their mooring facilities. The Building Inspector advised them that they were in violatioin of the ordinance and the petitioners retracted their floats and held them, ashore until April 25, 1969, when they again extended them to a distance of 54 feet from the shore.
On May 13, 1969, the petitioner, Armin Erbsland, was served a summons for violation of the Building Zone Ordinance in enlarging and extending his facilities and changing the use of Erbsland Boat Yard without approval of the Planning Commission. The prosecution is pending.
Petitioners take the position that the lands under water are under the exclusive jurisdiction of the State, of New York and the United States. He argues also that since he intends to procure a lease from the State of New York, title will be undisturbed and State sovereignty will continue.
*967 The fact that the ordinance may not be enforced against the State is in accordance with general principles which exempt municipalities in the performance of municipal functions from the application of zoning ordinances. (See Anderson, Zoning Law and Practice in New York State, §§ 9.02, 9.03.) But that is not to say that functions and activities which are proprietary in nature enjoy the same exemption. They do not. Section 28-a of the General City Law grants the authority to cities to create master plans for their entire areas, which specifically include waterways. Anderson, in the work cited above, concluded in section 8.06 that‘ ‘ where the land is within the municipality but owned by the state, it may be included in a zoning district, but the use restrictions will not be enforceable against the state. In the event such land is disposed of by the state and subjected to private reclamation and development, it would appear that the land would be subject to the restrictions imposed upon all land of the zoning district in which it is situated ”.
Finally, as a practical matter, it is not conceivable that there could be permitted to exist a hiatus in regulation of land use as the sole result of ownership by the State. Such a condition would effectively destroy the efficacy of land use regulation, contrary not only to the interest of the local municipality, but of the State as well.